1   Donald K. Birner (admitted *pro hac vice*)      Robert A. Mittelstaedt (State Bar No. 60359)
    d.birner@comcast.net                            ramittelstaedt@JonesDay.com
2   2613 Mayflower Dr.                              Christopher Lovrien (State Bar No. 230546)
    Pekin, IL 61554                                 cjlovrien@jonesday.com
3   (309) 925-3037                                  Nathaniel P. Garrett (State Bar No. 248211)
                                                    ngarrett@JonesDay.com
4   Kaiser U. Khan (State Bar No. 139929)           Kapri L. Saunders (State Bar No. 313360)
    Law Offices of Kaiser U. Khan                   ksaunders@jonesday.com
5   kaiser.khan@sbcglobal.net                       JONES DAY
    1388 Sutter Street, Suite 910                   555 California Street, 26th Floor
6   San Francisco, CA 94012                         San Francisco, CA  94104
                                                    Telephone:   +1.415.626.3939
7   Attorneys for Plaintiffs                        Facsimile:   +1.415.875.5700

8                                                   Attorneys for Defendant
                                                    CHEVRON PRODUCTS COMPANY, a
9                                                   division of CHEVRON U.S.A. INC.

10

11                          UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13                               OAKLAND DIVISION

14

15   **DONALD E. POTTER, and PHILLIP**          Case No. 4:17-cv-06689-PJH
     **NOVAK, individually and on behalf of all**
16   **others similarly situated,**              **JOINT CASE MANAGEMENT**
                                                  **STATEMENT**
17                  **Plaintiffs,**
                                                  Date:        **October 25, 2018**
18          v.                                    Time:        **2:00 p.m.**
                                                  Place:       **Courtroom 3**
19   **CHEVRON PRODUCTS COMPANY, a**              Judge:       **Hon. Phyllis J. Hamilton**
     **division of Chevron U.S.A. Inc.,**
20
                    **Defendant.**
21

22

23

24

25

26

27

28

1    Pursuant to the Standing Order of All Judges of the Northern District of California dated

2    January 17, 2017 and Civil Local Rule 16-9, plaintiffs Donald E. Potter and Phillip Novak, and

3    defendant Chevron Products Company ("Chevron"), by and through their attorneys of record,

4    jointly submit the following case management statement.  To the extent the parties have not

5    reached agreement, their respective portions are stated in the applicable sections below.

6    **INTRODUCTORY STATEMENT**

7    Plaintiffs' Statement:  Plaintiffs  object to defendant's proposed bifurcated discovery

8    which is based upon defendant's dubious distinction between named plaintiffs claims and class

9    members claims for the following reasons:

10    (1)    The claims of the named plaintiffs and the claims of putative class members are

11    indistinguishable. The focus of all claims regards the validity of the fees charged class members

12    in connection with oil changes as well as  the agency of the stations.

13    (2)    It is impossible for defendant to develop meaningful search terms that distinguish

14    between named plaintiff's claims and class claims, because the claims are intertwined and

15    inseparable. Conducting separate discovery for each is impractical and not expedient.

16    (3)    Phased discovery will "unnecessarily prolong" this litigation and increase the

17    expense involved for both sides.   Phased discovery here will lead to duplicated and delayed

18    discovery. Manual For Complex Litigation (Fourth) § 11.213; see In re Hamilton Bancorp, Inc.

19    Sec. Litig., No. 01–CV–0156, 2002 WL 463314, at *1 (S.D. Fla. Jan. 14, 2002) (explaining that

20    in certain cases, bifurcation may increase the costs of litigation by "protracting the completion of

21    discovery, coupled with endless disputes over what is 'merit' versus 'class' discovery").

22    (4)    If, bifurcated, this Court would likely have to resolve various needless disputes that

23    would arise concerning the classification of each document as "named plaintiffs discovery " vs.

24    "putative class members " discovery. *Newberg on Class Actions* § 9:44 n.4 (4th ed. 2012).

25    commenting on bifurcating class certification and merits.  This concern has been echoed by

26    district courts throughout the country. *See, e.g.*, *In re Rail Freight FuelSurcharge*, 258 F.R.D. at

27    174; *In re Plastics Additives*, 2004 WL 2743591; *In re Hamilton Bancorp, Inc. Secs. Litig.*, 2002

28    WL 463314, at *1 (S.D. Fla. Jan. 14, 2002); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41

(N.D. Cal. 1990).

(5)    Phased discovery is likely to result in Plaintiff being denied access to information necessary to contest the Summary Judgment motion.  See: "Summary judgment should be refused where nonmoving party has not had opportunity to discover information that is essential to its opposition." *Burnside-Ott Aviation Training Center, Inc. v. U.S., C.A.Fed.*1993, 985 F.2d 15.  At least when the party opposing summary judgment has not been dilatory in seeking discovery, summary judgment should not be granted when he is denied reasonable access to potentially favorable information.  *Quinn v. Syracuse Model Neighborhood Corp.*, C.A.2 (N.Y.) 1980, 613 F.2d 438.

(6)    The Federal Rules of Civil Procedure, specifically rule 26 (a) & (b) impose discovery limitations on the scope of discovery as well as limitations on the frequency and extent which suffice in this case;

(7)    Discovery, limited by bifurcation, under these circumstances, is not supported by the Federal Rules of Civil Procedure, which "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  Bifurcation of discovery would unnecessarily delay the proceedings and the ultimate resolution of an action.

(8)    A party wishing to limit the scope of discovery, or control its sequence, has the burden to show "good cause" for such an order. Fed. R. Civ. P. 26(c)(1).

(9)    Defendants proposal for bifurcated successive motions for summary judgment should likewise be denied by the court for the same reasons and for the additional reason that it would require the court to rule on dispositive motions that are redundant in many respects.

(10)    Phased discovery predicated on an unfiled motion for summary judgment is likely to result in plaintiffs being denied access to information to oppose the motion in contravention of FRCP 56 (d)

(11)    Limiting the number of depositions may well deprive plaintiff of the opportunity to take the depositions of persons who execute declarations or affidavits in support of defendant's motions for summary judgment.

- 2 -

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

(12)   Under California law as well as FRCP 26 (b) (1) "the purpose of pretrial discovery is to obtain all of the facts relative to a claim or defense.  Hernandez v. Superior Court, 112 Cal. App. 4th 285, 301, 4 Cal. Rptr. 3d 883, 896–97 (2003), as modified (Oct. 23, 2003) Discovery should not be confined to the named plaintiffs claims. Plaintiffs should be allowed to obtain all the facts relative to any defense and test the credibility of any declarants or affiants presented in support of such Motions.

(13)   Chevron's claim that plaintiffs' were merely overcharged is not correct. Oil changes do not require shop supplies and the disposal or recycling of the oil is an integral part of the oil change that is paid for by the fee for oil change service.  It is a form of unbundling overhead. There are additional reasons the charges are invalid as stated in. FAC 20-34, 34-38.

<u>Chevron's Statement:</u>  Plaintiffs claim that two Illinois oil-change businesses overcharged them by a total of about $6.  As the Court stated when it granted in part Chevron's motion to dismiss, plaintiffs' remaining claims hinge on their allegation that the two Operators "never actually performed the services associated with the shop-supply and disposal fees that were identified and charged for on the invoices." Dkt. 63 at 11.  If this central allegation is false, the case is over.  Consistent with that view, the Court instructed the parties that it would hear motions for summary judgment "on the issues that require further factual development prior to hearing a motion for class certification." *Id.* at 23.

Against this backdrop, the most sensible and efficient course is to focus discovery on the claims of the two named plaintiffs regarding their transactions with the two Illinois stations—*i.e.*, did the two Operators, in fact, perform services associated with the shop-supply and disposal fees charged on plaintiffs' invoices; and did Chevron create the impression that the two stations were its agents, and did either plaintiff reasonably believe that the stations were Chevron's agents?

As explained in more detail below, Chevron proposes that the case be phased, with the first phase limited to those matters that are relevant and proportional to the named plaintiffs' causes of action.  Given the dubious nature of plaintiffs' claims, it makes little sense to embark on discovery about the universe of oil changes at some 300 stations in some 30 states, each with varying factual settings and different laws.  For example, whether an operator in Florida charged

1   for shop supplies or oil disposal—or whether that operator did or didn't use shop supplies or

2   dispose of oil—does not help these two plaintiffs prove their claims as to what happened at the

3   two specific businesses they dealt with.  The same is true of each other element of plaintiffs'

4   claims, including whether they reasonably believed that they were dealing with Chevron.

5       After the first phase of discovery, Chevron anticipates that it will move for summary

6   judgment on the issues that required "further factual development": to wit, whether the stations

7   performed services associated with the fees they charged, whether the Operators are the

8   ostensible agents of Chevron, and whether the Operators are necessary and indispensable parties.

9   If the first phase of discovery and the ensuing summary judgment motion results in dismissal of

10  the case, no further discovery would be warranted.

11      Should any claims remain following the Court's summary judgment ruling, Chevron

12  proposes a second phase limited to plaintiffs' class claims.  In May 2019, the parties will conduct

13  a further Rule 26(f) conference to discuss what additional discovery is needed vis-à-vis potential

14  class claims, the length of time for completing that discovery, and the scheduling of additional

15  motions (including a Rule 56 motion addressed to other issues as may be appropriate and a class

16  certification motion).

17  **1.      JURISDICTION AND SERVICE**

18      <u>Plaintiffs' Statement:</u>  This court has jurisdiction over this action pursuant to 28 U.S.C

19  §1332 (d)(2), because (i) at least one member of the class is a citizen of a different state than

20  defendants,  (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs

21  and (iii) none of the exceptions under that subsection apply to this action.

22      This court has personal jurisdiction over defendant because it conducts business in this

23  District, is headquartered and registered to do business in this District

24      The defendant was duly served and has entered its general appearance in this matter.

25      **Rule 19 does not required joinder of stations**

26      First, the issue of the want of an indispensable party is not a jurisdictional one. *Warner v.*

27  *Frost Nat. Bank of Mineeapolis* (C.A 8) 236 F. 2d 853. (1956)

28      Furthermore, as set forth in Plaintiffs' opposition to the Motion to Dismiss (Dkt. 40) he

operators are not necessary or indispensable parties under Rule 19 for several reasons:

(1)     Those jointly and severally liable such as principal and agent or joint tortfeasors are usually not necessary or indispensable parties; "Plaintiff may choose to sue exactly as many jointly and severally liable parties as he wishes, and those left out of lawsuit are not "indispensable parties." *Tripodi v. Local Union No. 38, Sheet Metal Workers' International Ass'n, AFL-CIO, S.D.N.Y.2000, 120 F.Supp.2d 318. Temple v. Synthe's Corp. Ltd.* 498 U.S. 5 (1990)

(2)     Chevron lacks standing to assert such claim on behalf of absent parties because it does not have legally protected interest;     *United States v. Bowen*,172 F.3d 682 (9th Cir.1999),

(3)     No relief is expected or requested from the operators, nor are the non party stations bound by any judgment against Chevron;

(4)     Rule 19 (d) explicitly limits joinder in class action context.  In *Shimkus v. Gersten (9th cir,) 816 F2d 1318, 1321 (1987*) the court held that Rule 19 only applies to class action to the extent it does not conflict with Rule 23;

(5)     Requiring joinder of retailers of services defeats the Class Action Fairness Act (CAFA) stated purpose to " assure fair and prompt recoveries for class members with legitimate claims." 28 U.S.C. § 1711

(6)  Retail HXL stations do not have "protected interest" under Rule 19 (B) (i).

Chevron's Statement:  All parties have been served in this matter.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2).

As set forth in the briefing on Chevron's motion to dismiss, Chevron's position is that the Court should decline to exercise jurisdiction because plaintiffs failed to join necessary and indispensable parties (*i.e.*, the Operators that serviced plaintiffs' vehicles), and plaintiffs disagree.

**2.     FACTS**

Plaintiffs' Statement:  This putative nationwide class action consists of thousands of persons, that defendant Chevron repeatedly charge oil waste disposal and shop supply fees at its Havoline Xpress Lube [HXL] Facilities ("Facilities"), throughout the country, immediately after consumer class members  vehicles' oil and filters were changed.

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

- 5 -

1   These Centers  charge customers false and fictitious 'shop supply' fees, by labeling

2   charges as non-specific 'shop supplies.' the consumer is intentionally not informed that no shop

3   supplies were utilized or supplied by HXL centers in connection with the oil changes.

4   Both the oil recycling or disposal fees and shop supply fees were charged with the

5   knowledge, consent and active participation of Chevron

6   Defendants and their affiliated entities or Operators, under common management control,

7   conspired and acted in concert with one another to impose the charges asserted herein.

8   Defendants are jointly and severally liable along with their affiliated Centers for these fees

9   charged to their customers.

10   Plaintiffs Donald Potter and Phillip Novak each had their vehicles oil changed at two

11   different stations in Illinois branded as Chevron Havoline xpress Lube.  Defendant admits that the

12   commercial relationship between the station operators and Chevron was governed by the

13   Havoline xpress lube sales program agreement. ("sales agreement") Exhibit "2" attached to

14   FAC )

15   However, Chevron neglects to mention that the sales agreements incorporate by reference

16   the Havoline Xpress Lube Standards of Appearance and Operations ("standards") Exhibit "3" to

17   FAC) by which  dictates and controls every nuance of the stations business enterprise and that

18   any deviation from the standards by the operators constitutes grounds for contract termination.

19   Although the sales agreement uses self- serving language designed to insulate itself from

20   liability the substance of the sales agreement and standards shows that Chevron fully intended to

21   give oil change customers the distinct impression that Chevron controls the enterprise, which it

22   indeed does. For instance, the sales agreement states that "Customer further acknowledges that

23   Chevron has developed and maintained a quality image *in conjunction with the operation of*

24   *licensed xpress lube facilities. "* As far as the characterization by Chevron that the stations are

25   independent operators that is not controlling at all.  Provisions in agreements that purport to

26   negate a relationship of agency are held not to be determinative in the context of claims asserted

27   by third parties, See in *Piston v. Superior Court* 279 Cal. Rptr. 173,177 (1991) (in action brought

28   by customer, administrator of vehicle service contract could be found to be car dealer's agent,

despite provision disaffirming agency in agreement between dealer and administrator)

The sales agreements and standards that govern each station are standard for each station and in use for at least for the last ten years. The contracts are not highly individualized as contended by Chevron, rather the oil change service is an identical procedure where ever and whenever performed.

Plaintiffs will be able to prove at trial that shop supplies are not consumed or utilized in connection with oil change procedure wherever or whenever performed. The shop supply fee is non-specified and nebulous.  The so called hazardous waste fee is nonexistent as well, because the used oil is required by law to be recycled often yielding profit to the station and is a paid for as part of the oil change.  It is also an overhead expense and an integral part of the oil change.

Significantly since this litigation has commenced Chevron has been unable to specify how the shop supplies were allegedly used or provide a definition of shop supplies.  Since this litigation has commenced Chevron has been unable to specify the shop supplies allegedly used or how they are used or provide a definition of shop supplies.

Chevron's Statement:  Plaintiffs Donald Potter and Phillip Novak had their vehicles' oil and filters changed in Illinois at two oil-change stations independently-owned and operated by Lyons Express Lube LLC ("Lyons") and Grease Monkey Midwest, LLC ("Grease Monkey"), respectively.  Chevron's commercial relationship with each of those Operators is governed by a Havoline® xpress lube® Sales Program Agreement, pursuant to which the Operators are permitted to use and display Chevron and Havoline trademarks in connection with the retail sale of products manufactured by Chevron provided they do so in a way "which discloses [the Operator's] identity and which does not imply . . . Chevron's ownership of the [Operator's] Facility(ies)."  The Sales Program Agreement expressly disclaims any ownership or franchise relationship and recognizes that each Operator is "an independent business entity that is free to set its own selling prices and terms of sale, and generally conduct its business as it determines subject to the obligations" of the Agreement.

Potter alleges that Lyons presented him with an invoice that included a $4.14 charge for hazardous waste disposal.  Novak alleges that Grease Monkey presented him with an invoice that

1   included a $2.99 charge for "shop supplies."  Plaintiffs allege that they contracted and paid for

2   shop supplies and waste disposal, but shop supplies were not in fact provided and the oil was

3   "recycled not disposed."

4       Plaintiffs seek to represent a nationwide class of all adult persons who were charged and

5   paid a fee "purportedly associated with recycling or disposing of used oil and/or for shop

6   supplies, in connection with an oil change performed by Havoline Xpress Lube at any time within

7   the United States."  Plaintiffs seek to certify a class even though putative class members would

8   have entered into individual contracts and whether any particular Operator used shop supplies and

9   disposed of used oil is a highly-individualized question that cannot be resolved on a class-wide

10  basis.

11      On August 24, 2018, this Court granted in part and denied in part Chevron's motion to

12  dismiss.  The Court dismissed with prejudice plaintiffs' claims under California consumer

13  protection laws, and for unconscionability and negligence.  The Court denied the motion to

14  dismiss plaintiffs' claims for breach of contract, breach of the covenant of good faith and fair

15  dealing, and unjust enrichment, finding that "there are factual disputes with respect to the nature

16  of the contracts at issue in this action and whether the particular Operators plaintiffs interacted

17  with were acting as agents of Chevron."  The Court also held that "further development of the

18  record is necessary to determine certain legal questions in this case, including whether" the

19  Operators "must be joined in this action pursuant to Federal Rule of Civil Procedure 19."  Finally,

20  the Court instructed that it would "hear motions for summary judgment on the issues that require

21  further factual development prior to hearing a motion for class certification."

22      Principal facts in dispute include the following:

23      a)  Whether Grease Monkey Midwest used or provided shop supplies;

24      b)  Whether Lyons "disposed" of hazardous waste;

25      c)  Whether Lyons was required to recycle plaintiff Potter's oil for free;

26      d)  Whether Chevron intentionally or carelessly created the impression that these

27          Operators were Chevron's agent;

28      e)  Whether plaintiffs reasonably believed that the Operators were Chevron's agent and

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

1    were harmed thereby.

2    **3.     LEGAL ISSUES**

3          <u>Plaintiffs' Statement:</u>  The primary legal issues include;

4          Whether charging for "shop supplies" or hazardous waste disposal are valid charges in

5    connection with an oil change.

6          Whether charging these fees beach the contract or violate the implied covenant of good

7    faith and fair dealing.

8          Whether this defendant is liable for any damages

9          Whether the named plaintiffs 'claims are typical of the claims of other class members and

10   are the prerequisites for class certification met.

11         Whether this defendant cloaks its agents with actual, ostensible or apparent authority to

12   contract on their behalf.

13         <u>Chevron's Statement:</u>  The following is a list of the principal legal issues in dispute in this

14   case.  Because Chevron's factual investigation is ongoing, this list of legal issues is limited by

15   information now available to Chevron based on reasonable and diligent investigation conducted

16   to date.  Chevron reserves the right to raise additional legal issues as the case progresses:

17         a)   Whether the two independently-owned and operated Operators are necessary and

18              indispensable parties under Federal Rule of Civil Procedure 19;

19         b)   Whether plaintiffs and Chevron entered into a contract;

20         c)   Whether these Operators failed to do something that the contract required them to do,

21              or did something the contract prohibited them from doing;

22         d)   Whether any breach by these Operators was a substantial factor in causing harm to

23              plaintiffs;

24         e)   Whether the Operators unfairly interfered with plaintiffs' right to receive the benefits

25              of the contract;

26         f)   Whether Chevron can be held liable for a breach of contract or other misconduct, if

27              any, by the Operators;

28         g)   Whether plaintiffs' unjust enrichment claim is based on, or arises out of, a written

contract;

h)  Whether plaintiffs conferred a benefit on Chevron that Chevron knowingly accepted under circumstances that make it inequitable for Chevron to retain the benefit without paying for its value;

i)  Whether plaintiffs can meet the prerequisites for certification under Federal Rule of Civil Procedure 23.

**4.      MOTIONS**

<u>Plaintiffs' Statement:</u>  Plaintiffs anticipate filing a motion for class certification after appropriate discovery has been conducted.

Plaintiffs anticipate, upon further development of the record, filing a motion to reconsider dismissal of plaintiffs' claims with respect to California's Unfair Competition Law and negligence because the Court inadvertently overlooked material allegations of the complaint and misapprehended Plaintiffs contentions and claims.

<u>Chevron's Statement:</u>  Chevron has no motions pending.  Chevron anticipates that one or both parties will file motions for summary judgment on the named plaintiffs' claims, which Chevron proposes will be heard on April 24, 2019.

Should any of the named plaintiffs' claims survive summary judgment, and the case proceeds to Phase Two on the class claims, Chevron requests leave of court to file a second summary judgment motion on the class claims.  The schedule for this second summary judgment motion—and the other Phase Two proceedings—can be addressed at the parties' proposed May 2019 Case Management Conference.

**5.      AMENDMENT OF PLEADINGS**

<u>Plaintiffs' Statement:</u>  Plaintiffs plan to amend the Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1).  Plaintiffs do not anticipate any other amendments at this time, but reserve the right to amend their complaint pursuant Rule 15 to add additional claims or parties if and when appropriate and subject to Court approval, if necessary.

Plaintiffs inform the court and opposing counsel that on the 11th day of October 2018 lead plaintiff Donald Potter died as a result of cardiac arrest.

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

As a result Plaintiff anticipates filing an appropriate motion for substitution under FRCP 25 (a) for an Order substituting the personal representative of Plaintiff now deceased as a class representative in place and lieu of the deceased.  In addition, plaintiffs' counsel further anticipates adding lead plaintiffs residing in Illinois as well as the State of California.

Chevron's Statement:  Chevron does not anticipate amending its pleadings at this time. Chevron would oppose any motion for reconsideration as untimely, and would oppose any motion for leave to file an amended complaint under Rule 15—including an amendment to add a California plaintiff—as futile, dilatory, and unduly prejudicial.

**6.      EVIDENCE PRESERVATION**

The parties have, or are, taking steps necessary to preserve evidence related to the issues reasonably evident in this action.  The parties also certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information.

**7.      DISCLOSURES**

The parties intend to exchange the initial disclosures required by Rule 26 on October 18, 2018.

**8.      DISCOVERY**

Plaintiff's Statement:

**1.      Scope of anticipated discovery**

Plaintiffs' discovery: Plaintiffs intend to seek discovery directed to the following subjects without limitation; (1) the relationship between defendant and its stations as it relates to consumer interaction, the charges in dispute, and the oil change enterprise as a whole; (2) All documents that describe the practices, policies or procedures or the like relating to the charges or fees for oil changes performed by defendant's customers/operators for the past four years: (3) any lawsuits, judicial or administrative proceedings to which Chevron or HXL or any CUSTOMER was accused any illegal, deceptive, unfair or improper conduct relating to the charges or fees in connection with oil changes at any HXL facilities located in United States or elsewhere such as foreign countries in the past four years.(4) advertisement and piece of promotional literature that pertains or relates to oil changes at HXL facilities, including but not limited to, all coupons and

1   pieces  of promotional literature  issued, reviewed  or approved by Chevron over the past four

2   years; (5) All agreements  between Chevron and any of its customers, as defined herein, that

3   mention prices, fees or charges in connection with oil changes over the past four years; (6) Any

4   and all documents that relate to the training classes provided by Chevron to the stations, including

5   but not limited to, any continuing education programs referenced in Section 3 par. 2 of the sales

6   programs agreement (7) Copies of any documents that relate to the retail automation system

7   mentioned tin Exhibit C to Guide; (7) any affidavits or declarations in support of defendant's

8   motion for summary judgment; (8) any affirmative defenses posed by defendant in its answer

9        **2.      Limitations**

10       Plaintiffs contend that no limitations should be placed on discovery other than those

11  imposed by the Federal Rules of Civil Procedure. Defendants may seek appropriate limitations on

12  the scope of discovery pursuant to the Federal Rules of Civil Procedure and the district's E-

13  Discovery Guidelines, including but not limited to the proportionality standards set forth in Fed.

14  R. Civ. P. 26(b)(2)(C). 26(g)(1)(B)(iii) and E-discovery Guideline 1.03.

15       Defendants have proposed a bifurcated discovery which should be rejected by the Court.

16  Plaintiffs object to the phased or bifurcated discovery schedule. Plaintiff as the party opposing

17  summary judgment has the right to reasonable access to potentially favorable information to

18  defend their claims especially where such information is in the sole possession of the defendant.

19  The reason proffered by defendant is at best vague for bifurcated discovery. It is suggested that

20  the merits of plaintiffs individual claims may eliminate the need for future proceedings. On the

21  contrary, the claims of the named plaintiffs are not separable from the class as a whole.

22       A party wishing to limit the scope of discovery, or control its sequence, has the burden to

23  show "good cause" for such an order. Fed. R. Civ. P. 26(c)(1).

24       Bifurcation of discovery has been generally disfavored by the courts. See below;

25       As the district courts for the District of Columbia and the Eastern District of Pennsylvania

26  have observed, "bifurcated discovery 'belies the principles of judicial economy.'" In re Rail

27  Freight Fuel Surcharge Antitrust Litig., 258 F.R.D. 167, 172 (D.D.C. 2009) (quoting In re Plastics

28  Additives Antitrust Litig., 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004)). Specifically, the

bifurcation of discovery fails to promote judicial economy in that it causes disputes regarding

whether requested discovery is class- or merits-based.

The leading treatise on class action litigation explains:

> ...If such an order bifurcating discovery is signed, the defense then [often] objects
> to all of the discovery demands claiming all are "merits discovery." As a result,
> additional motions, hearings and delay disrupt the flow of information. Eventually,
> the court will have to order discovery or modify the order.

Newberg on Class Actions § 9:44 n.4 (4th ed. 2012).

Bifurcation also tends to result in the duplication of effort and expense for the parties.

For example, when discovery has been bifurcated, a defendant may seek to limit a witness's

deposition to its conception of named plaintiff issues, thereby necessitating a second deposition of

that witness later in the litigation in order to address 'class issues'.

<u>Chevron's Statement:</u>  In accordance with the Court's ruling that "[t]he court will hear

motions for summary judgment on the issues that require further factual development prior to

hearing a motion for class certification," Chevron proposes that fact discovery proceed in two

phases.

Whether to bifurcate discovery in a class action prior to certification is committed to the

sound discretion of this Court.  *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006).

Here, limiting discovery to plaintiffs' individual claims prior to a ruling on a motion for summary

judgment and, then, if necessary, engaging in class-wide discovery, is the most efficient way to

resolve this case.  Other courts, in the interest of judicial economy, have bifurcated discovery to

first address whether the named plaintiff's individual claims have merit, and then, if necessary, to

address class claims.  *See, e.g.*, *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 680-81, 685 (4th Cir.

1986) (affirming bifurcation of discovery where district court "agreed with counsel . . . that

plaintiffs would be required 'to establish viable individual actions' before class discovery would

be allowed"); *Stavroff v. Midland Credit Mgmt. Inc.*, 2005 WL 6329149, at *3 (N.D. Ind. June 8,

2005) (bifurcating discovery to avoid expending time and resources on class issues if plaintiff

cannot prove the merits of his case); *Larson v. Burlington N. & Santa Fe Ry. Co.*, 210 F.R.D.

663, 665 (D. Minn. 2002) ("Here, we conclude that the mandate of Rule 1, Federal Rules of Civil

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

- 13 -

Procedure, is best implemented by bifurcated discovery -- that is, by completing discovery as to the claims of the four named-Plaintiffs, prior to extensive discovery on the merits of the 'class claims.'").

Chevron proposes a five-month period of first-phase discovery limited to those matters that are relevant and proportional to the named plaintiffs' causes of action.  Plaintiffs' statement identifies numerous areas of proposed discovery—such as proceedings in which Chevron was accused of unfair conduct relating to the charging of fees—that have no nexus to Plaintiffs' viable theory of liability.  Phase One discovery should be limited to information reasonably calculated to lead to the discovery of information related to plaintiffs' theory that the two Operators "never actually performed the services associated with the shop-supply and disposal fees that were identified and charged for on the invoices."  Dkt. 63 at 11.

Should any claims remain following the Court's summary judgement ruling, the parties will conduct a further Rule 26(f) conference to discuss what additional second-phase discovery (including expert discovery) is needed vis-à-vis potential class claims, the length of time for completing that discovery, and the scheduling of additional motions (including any further Rule 56 and class certification motions).  The parties then would submit a second-phase Case Management Statement to the Court for its approval.

At this time, Chevron submits no more than five depositions per side are necessary and appropriate during the first phase of discovery.  The remaining discovery allotments and limitations contained in the Federal Rules of Civil Procedure and Local Rules are appropriate for first-phase discovery.

The parties will seek to agree on the terms of a Protective Order governing confidential documents and will submit any agreed order to the Court for approval.

**9.      CLASS ACTIONS**

Plaintiffs' Statement:  Pursuant to Civil L.R. 16-9(a), any party seeking to maintain a case as a class action must include in the case management statement the following additional information:

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

1.   **The Specific Paragraphs of Fed. R. Civ. P. 23 under which the Action is Maintainable as a Class Action:**

Plaintiffs contend that this action is maintainable under Rule 23 paragraphs (a) and (b)(3).This action is brought under Rule 23(b)(3) primarily because the relief sought per individual member of the class is small given the burden and expense of individual prosecution of potentially extensive litigation necessitated by the conduct of defendants. Hence, individual class members are unlikely to have any interest in controlling the prosecution of their claims. There are no anticipated difficulties likely to be encountered in the management of the claim on behalf of the class.

2.   **A Description of the Class or Classes in Whose Behalf the Action is Brought:**

Plaintiffs anticipate that they will move to certify the following class as defined in paragraph 55 of the First Amended Complaint:

All adult persons who were charged and paid a fee purportedly associated with recycling or disposing of used oil and/or for shop supplies, in connection with an oil change performed by Havoline Xpress Lube at any time within the United States.  Excluded from the class are defendants, including any entities in which defendants have a controlling interest, as well as their agents, representatives, officers, directors, employees, trustees, parents, children, heirs, assigns and successors, and other persons or entities related to or affiliated with defendants; and the judges to this case as assigned, their staff, and their immediate families. Plaintiffs reserve the right to amend the class definition.

3.   **Facts Showing that Plaintiffs are Entitled to Maintain the Action under Fed. R. Civ. P. 23(a) and (b):**

**a. Numerosity.** Plaintiffs do not know the exact number of Class members, but believe that the Class comprises thousands, if not tens of thousands, of consumers. The joinder of all Class members is impracticable due to the class size and relatively modest value of each individual claim. Plaintiffs anticipate that Class members can be identified through records maintained by Defendants.

**b. Commonality and Predominance.** Legal and factual issues are common to the Class

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

and will predominate over questions that might affect individual Class members. These include, but are not limited to, the following: (1) whether Defendants' practice of charging consumers for shop supplies and hazardous waste disposal breached the contract, was deceptive, unfair, or violated the covenant of good faith and fair dealing or constituted unjust enrichment.

**c. Typicality.** Plaintiffs' claims are typical in that they and all Class members sustained injury as a direct result of Defendants' practice through its agents of charging consumers for invalid charges in connection with oil changes.

**d. Adequacy.** Plaintiffs have no interests antagonistic to the Class, and have retained competent counsel who prior to the class certification hearing will avail himself of the resources of experienced co-counsel.

**e. Superiority.** Class members' claims are relatively small compared to the burden and expense required to litigate their claims individually. In addition, a class action will present far fewer management difficulties than individual litigation and will provide the economic and efficiency benefits of a single adjudication. to the burden and expense required to litigate their claims individually. In addition, a class action will present far fewer management difficulties than individual litigation and will provide the economic and efficiency benefits of a single adjudication.

**This Action is Brought Under Rule 23(b)(3)**

This action is brought under Rule 23(b)(3) primarily because the relief sought per individual member of the class is small given the burden and expense of individual prosecution of potentially extensive litigation necessitated by the conduct of defendants. Hence, individual class members are unlikely to have any interest in controlling the prosecution of their claims. There are no anticipated difficulties likely to be encountered in the management of the claim on behalf of the class.

This class action is manageable because of the large number of potential class members basing their claims on the same common course of conduct by Chevron, emanating from its headquarters in this district. A class action is a more manageable and more efficient use of judicial resources than individual claims.

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

- 16 -

It would be virtually impossible for the class members to seek redress on an individual basis and even if some class members themselves could afford such individual litigation, the court system could not.

**4.      A Proposed Date for the Court to Consider whether the Case can be maintained as a Class Action:**

Plaintiffs propose the following Class Certification schedule:

- May 16, 2019: Plaintiffs' Motion for Class Certification Due;

- June 16, 2019: Defendants' Opposition to Motion for Class Certification Due;

- July 16, 2019: Plaintiffs' Reply in Support of Class Certification Due

- 120 days after class certification ruling: Fact discovery cut-off

- 30 days after fact discovery cut-off: Plaintiffs' expert disclosures and report due;

- 45 days after Plaintiffs' expert report is served: Defendants' expert disclosure and report due;

- 45 days after Defendants' expert report is served: Plaintiffs' rebuttal expert report due

Chevron's Statement:  Chevron's position is that a discussion of the nature and scope of any proposed class should await the Court's ruling on whether the individual claims of the putative class representative survive summary judgment and in what form.  To the extent any further response is required at this time, Chevron's position is that a class action cannot properly be certified under Federal Rule of Civil Procedure 23.

**10.      RELATED CASES**

The parties are not aware of any related cases.

**11.      RELIEF**

Chevron denies that any damages are appropriate.  Chevron seeks dismissal with prejudice and any costs.

**12.      SETTLEMENT AND ADR**

The parties do not believe settlement discussions or ADR would be productive at this time.  The parties believe that mediation through a mutually agreed upon mediator may be appropriate for this case at some point in the future.

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

1  **13.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

2         Chevron declined to proceed before a magistrate judge on January 3, 2018, and this action

3  was reassigned to the Honorable Phyllis J. Hamilton on January 8, 2018.

4  **14.    OTHER REFERENCES**

5         This case is not suitable for reference to binding arbitration, a special master, or the

6  Judicial Panel on Multidistrict Litigation.

7         If the Court intends to refer discovery disputes to a magistrate judge, Chevron respectfully

8  proposes that the Court appoint the Honorable Jacqueline Scott Corley as a discovery referee.

9  **15.    NARROWING OF ISSUES**

10        No issues can be narrowed by agreement or by motion at this time.

11        As explained above, Chevron proposes bifurcating discovery into two phases.  During the

12  first phase, and up until the anticipated motion for summary judgment is decided, discovery

13  should be limited to matters that are relevant and proportional to the named plaintiffs' causes of

14  action.  If necessary, phase two discovery would be limited to any additional matters that are

15  relevant and proportional to the proposed class.

16  **16.    EXPEDITED TRIAL PROCEDURE**

17        The parties do not believe this case is appropriate for the expedited trial procedure.

18  **17.    SCHEDULING**

19        <u>Plaintiffs' Statement:</u>  Plaintiffs propose the following schedule:

| | |
|---|---|
| Deadline for Summary judgment motions | March 15, 2019 |
| Hearing on summary judgment motions | April 24, 2019 |
| Further case management conference | May 2019 |
| Plaintiffs' Motion for Class Certification Due | May 16, 2019 |
| Defendants' Opposition to Motion for Class Certification Due | June 16, 2019 |
| Plaintiffs' Reply in Support of Class Certification Due | July 16, 2019 |

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

| Fact discovery cut-off | 120 days after class certification ruling |
|---|---|
| Plaintiffs' expert disclosures and report due | 30 days after fact discovery cut-off |
| Defendants' expert disclosure and report due | 45 days after Plaintiffs' expert report is served |
| Plaintiffs' rebuttal expert report due | 45 days after Defendants' expert report is served |

Chevron's Statement:  Chevron proposes the following Phase One schedule:

| Phase One Fact Discovery Cut-Off | March 1, 2019 |
|---|---|
| Deadline for Summary Judgment Motions on Named Plaintiffs' Claims | March 15, 2019 |
| Hearing on Summary Judgment Motion(s) | April 24, 2019 |
| Further Case Management Conference | May 2019 Case Management Conference Date |

**18.     TRIAL**

Plaintiffs have requested a jury trial.  The parties cannot reasonably anticipate the length of trial at this stage and recommend revisiting the issue with the Court at a Further Case Management Conference.

**19.     DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Chevron filed its Certification of Interested Parties on January 26, 2018.

**20.     PROFESSIONAL CONDUCT**

The parties certify that all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     OTHER MATTERS**

The parties do not have any additional matters to raise at this time.

1

2  Dated: October 18, 2018

3

4                                              By: s/ Don Birner
                                                   Don Birner
5
                                               Attorneys for Plaintiffs
6

7

8  Dated: October 18, 2018                     JONES DAY

9

10                                             By: /s Nathaniel P. Garrett
                                                   Nathaniel P. Garrett
11
                                               Attorneys for Defendant
12                                             CHEVRON PRODUCTS COMPANY, A
                                               DIVISION OF CHEVRON U.S.A. INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joint Case Mgmt. Stmt. 4:17-cv-06689-PJH

1

**FILER'S ATTESTATION**

2        I attest under penalty of perjury that concurrence in the filing of this document has been

3  obtained from all signatories.

4    Dated: October 18, 2018                 JONES DAY

5

6                                           By: /s Nathaniel P. Garrett

7                                            Nathaniel P. Garrett

8                                  Attorneys for Defendant
CHEVRON PRODUCTS COMPANY, A
DIVISION OF CHEVRON U.S.A. INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28